IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2012 JUL 24 P 2: 56

| | | |
|---|---|---|
| Brian Wright, | ) | Civil Action No. 2:10-cv-2427-RMG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Stark Truss Co., Inc., | ) | |
| | ) | |
| Defendant. | ) | |

In this action, Plaintiff, a former employee of Defendant, asserts claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.* Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(g) DSC, this matter was automatically referred to the United States Magistrate Judge for all pretrial proceedings. On January 9, 2012, Defendant filed a motion for summary judgment. (Dkt. No. 25). On February 10, 2012, Plaintiff filed a response in opposition (Dkt. No. 29), and on February 21, 2012, Defendant filed a reply (Dkt. No. 31). On May 10, 2012, United States Magistrate Judge Bristow Marchant issued a Report and Recommendation recommending that the Court deny Defendant's motion for summary judgment. (Dkt. No. 32). On May 29, 2012, Defendant filed objections to the Report and Recommendation. (Dkt. No. 34). On June 15, 2012, Plaintiff filed a reply to those objections (Dkt. No. 35), and on June 21, 2012, Defendant filed a sur-reply (Dkt. No. 37). After carefully

1

considering the record, the relevant law, and the Report and Recommendation, the Court hereby adopts the Report and Recommendation, as explained more fully below.[1]

## I. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* Where a party fails to file any specific objections, the Magistrate Judge's conclusions are reviewed only for clear error, *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## II. Summary Judgment Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*,

---

[1] The Court adopts all portions of the Report and Recommendation except for Section II, which the Court declines to adopt, for the reasons explained herein.

101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Rule 56 provides in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

### III. Analysis

#### a. Plaintiff's Allegations and Factual Background[2]

In this case, Plaintiff asserts that Defendant violated his rights under the ADA and FMLA when Defendant terminated Plaintiff on June 29, 2009. Plaintiff worked for Defendant's

---

[2] In the Report and Recommendation, the Magistrate Judge provides a thorough and accurate discussion of the factual background of this case along with citations to the relevant deposition testimony in the record. (Dkt. No. 32 at 2-8). Thus, the Court finds it unnecessary to restate the full factual background herein; rather, the Court simply provides a brief overview of the facts.

3

predecessor, and subsequently Defendant, from 1995 until he was terminated on June 29, 2009.[3] Also, Plaintiff's wife, Stephanie Wright, worked for Defendant's predecessor, and subsequently Defendant, from 2001 until she was terminated on June 29, 2009, the same day that Plaintiff was terminated. Defendant is a company which builds roof trusses and which currently has eight locations, including a location in Summerville, South Carolina, where Plaintiff and his wife worked. Plaintiff held various positions with Defendant over the years, but from 2001 until his termination in 2009, Plaintiff held the job of shipping supervisor/dispatcher. In this position, Plaintiff's responsibilities included contacting customers, setting up delivery dates, calling customers back to reconfirm delivery dates, making schedules for the drivers, and supervising the employees "in the yard." (Dkt. No. 25-10 at 6). At the time Plaintiff was terminated, he was making approximately $55,000 per year. Plaintiff's wife held an administrative position with Defendant. Plaintiff's supervisor from 2007 until his termination was John Bryant, the plant manager in Summerville. Mr. Bryant testified that he had the power to hire, discipline, and terminate Defendant's employees in the Summerville location. (Dkt. No. 25-11 at 3).

Plaintiff testified that he started suffering from severe acid reflux and severe heartburn around March of 2009. (Dkt. No. 25-10 at 13). Plaintiff testified that he went to the doctor around eight or nine times regarding these issues, missing work on occasion for the appointments. (*Id.*). Plaintiff testified that, around this time, he "was constantly sick, constantly lost sleep, lost appetite, and was losing weight." (*Id.*). Plaintiff also testified that by May of 2009 he was suffering from anxiety and depression and considered suicide on several occasions. (*Id.* at 13, 16). On Saturday, June 20, 2009, Plaintiff suffered from what was described in his medical records as a "nervous breakdown." (*Id.* at 15). During this incident, Plaintiff pulled out

---

[3] Plaintiff briefly left his job around 1998 but returned within approximately a year.

a gun in his house and threatened to kill himself in front of his wife and child. The police and Emergency Medical Services (EMS) were called to Plaintiff's house, and Plaintiff was taken to Trident Medical Center by EMS. Plaintiff spent the night in the hospital, and on Sunday, June 21, Plaintiff was committed to inpatient treatment at Palmetto Lowcountry Behavioral Health. Plaintiff stayed in inpatient treatment for three days, during which time Plaintiff was diagnosed with anxiety and depression, put on an antidepressant, and referred to counseling. On Wednesday, June 24, Plaintiff was released and sent home with no restrictions on his ability to work.

On Sunday, June 21, Plaintiff's wife called Angela Young, the office manager, and told her about the incident on June 20. Ms. Wright testified that she told Ms. Young that Plaintiff tried to commit suicide, that he was in the hospital, that he would not be at work the next day, and that she did not know when Plaintiff would be back at work. (Dkt. No. 25-9 at 9). Ms. Wright testified that Ms. Young told her not to worry about it because Plaintiff would be covered by the FMLA. (*Id.*). Ms. Wright also testified that Ms. Young told her not to tell Mr. Bryant the truth about Plaintiff's condition because Mr. Bryant would fire Plaintiff is she did. (*Id.*). After calling Ms. Young, Ms. Wright called Mr. Bryant. Ms. Wright testified that, during the telephone conversation with Mr. Bryant, she told him that Plaintiff was in the hospital, that Plaintiff was sick, that she did not know when Plaintiff would be released, and that she would give Mr. Bryant more details the next day. (*Id.* at 10).[4] On Monday, June 22, Ms. Wright went to work, met with Mr. Bryant and Ms. Young, and talked to them about the incident with Plaintiff. While the witnesses dispute specifically what was said during this meeting, they all

---

[4] Mr. Bryant and Ms. Young both admit that they spoke to Ms. Young on the phone on Sunday but both dispute the details of the phone conversations.

5

agree that Ms. Wright said that Plaintiff pulled out a gun and threatened to kill himself and that Mr. Bryant told Ms. Wright to go home and be with her family.

After Plaintiff was released from Palmetto Lowcountry Behavioral Health on Wednesday of that week, Plaintiff did not go to work on Thursday or Friday. On Friday, June 26, Plaintiff called Mr. Bryant and told him that he would be back at work on Monday, June 29. While Plaintiff and Mr. Bryant dispute the specifics of this conversation, they agree that Mr. Bryant asked Plaintiff whether Plaintiff would have to do jail time, that Plaintiff told him he would not, and that Mr. Bryant did not ask Plaintiff to come back to work before Monday, June 29. On Monday, June 29, Plaintiff went back to work. That day, Mr. Bryant met with Plaintiff. Plaintiff and Mr. Bryant dispute the details of their conversation during this meeting. Plaintiff testified that Mr. Bryant told him that he knew it was bad timing but that he had to let Plaintiff go. (Dkt. No. 25-10 at 11-12). Plaintiff testified that, when he was walking out of the office, Mr. Bryant called him back in and told him that he had to let his wife go too. (*Id.*). Plaintiff testified that, as he was getting up a second time, Mr. Bryant said that he could check and see if he could keep Plaintiff on as a "yard guy" but that he would have to take a pay cut. (*Id.*). Plaintiff testified that he did not take Mr. Bryant's comment as a sincere job offer. (*Id.*). According to Mr. Bryant's account of the meeting, Mr. Bryant told Plaintiff that, while Plaintiff was out the week before, Mr. Bryant realized that they could cover Plaintiff's responsibilities without Plaintiff's help and that they therefore had to eliminate Plaintiff's position, as Defendant was trying to save money any way it could. (Dkt. No. 25-11 at 10). Mr. Bryant testified that he offered Plaintiff a position in the yard but that Plaintiff declined the position. (*Id.*).

Since terminating Plaintiff on June 29, 2009, Defendant has not filled Plaintiff's position and has not given anyone a raise to cover Plaintiff's responsibilities. On October 8, 2009,

6

Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission. After receiving a Right to Sue letter, Plaintiff filed this action.

### b. Application of Law

In his Report and Recommendation, the Magistrate Judge provides a thorough and accurate discussion of the relevant law along with an application of the law to the facts. (Dkt. No. 32 at 9-28). The Court agrees with and adopts the rationale set forth in the Report and Recommendation (except for Section II of the Report and Recommendation, as discussed below) and incorporates it into this order. Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of those portions of the Report and Recommendation to which Defendant has specifically objected. *See* 28 U.S.C. § 636(b)(1). In its objections, Defendant makes four separate arguments as to why the Report and Recommendation is incorrect. (Dkt. No. 34). The Court has carefully considered each of these objections but, for the reasons explained herein, finds each of the objections unpersuasive.

### i. Objection Number One: "[Defendant] Did Not Know That Plaintiff Allegedly Was Disabled Or Had A Serious Health Condition When It Eliminated His Position."

In its first objection, Defendant argues that it is entitled to summary judgment on Plaintiff's ADA and FMLA claims because Defendant was unaware that Plaintiff was disabled or had a serious health condition at the time of Plaintiff's termination. First, the Court will address this objection with regard to Plaintiff's ADA claim. Second, the Court will address this objection with regard to Plaintiff's FMLA claim.

#### 1. Plaintiff's ADA Claim

Before addressing Defendant's objection, the Court finds it necessary to clarify the nature of Plaintiff's claim under the ADA. In cases where an employer refuses an employee's request

for an accommodation for the employee's disability and then terminates the employee, the employee may assert claims under the ADA for both wrongful discharge and failure to accommodate. *See, e.g., Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001). This is not such a case. In this case, Plaintiff never requested – and asserts that he did not need – an accommodation for his disability. Plaintiff testified as follows:

> Q: Did you ever ask for an accommodation from Stark Truss to help you with dealing with your condition of anxiety and depression?
> A: No, sir.
> Q: Do you believe that you needed an accommodation for that condition?
> A: I wouldn't say I needed an accommodation for that, no, sir.
> Q: Did you ever believe that you needed an accommodation for your condition of acid reflux?
> A: No, sir.

(Dkt. No. 25-10 at 15). Further, Plaintiff testified that he was released from Palmetto Lowcountry Behavioral Health with no work-related restrictions. (*Id.*). Thus, the gravamen of Plaintiff's claim under the ADA is not that Defendant failed to accommodate Plaintiff, but that Defendant terminated Plaintiff because of his disability. The Court is aware that Plaintiff's Complaint alleges that Defendant violated the ADA, not only by terminating Plaintiff because of his disability, but also "by terminating plaintiff without accommodating plaintiff's disability," (Dkt. No. 1 at 8), and that Plaintiff argued in his response to Defendant's motion for summary judgment that Plaintiff did need an accommodation for his disability – namely, time off of work. (Dkt. No. 29 at 16). However, this position is inconsistent with Plaintiff's testimony quoted above and by the following argument from Plaintiff's response brief which makes clear that Plaintiff's claim under the ADA is really one for wrongful termination:

> Defendant argues plaintiff's ADA claim should be dismissed because it accommodated plaintiff by giving him the week off and offering him another job. It is true that defendant gave plaintiff the week off. However, the basis of plaintiff's claim is that he was fired because he is disabled or because defendant perceived him to be disabled. Plaintiff also asserts that defendant violated the

8

> FMLA by firing plaintiff for taking that week off. The point is that defendant allowed plaintiff to take the week off, but then fired plaintiff the first day plaintiff returned from leave. The fact that defendant may have temporarily accommodated plaintiff by giving him the week off does not insulate it from liability for firing plaintiff because he took the week off or because he is disabled or because he was perceived by defendant to be disabled.

(Dkt. No. 29 at 17). Thus, the Court construes Plaintiff's claim under the ADA as a claim for wrongful discharge – not as a claim for failure to accommodate.[5]

"In a wrongful discharge case under the ADA, a plaintiff makes out a prima facie case by demonstrating that '(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.'" *Rhoads*, 257 F.3d at 387 n.11 (quoting *Haulbrook v. Michelin North Am., Inc.*, 252 F.3d 696, 702 (4th Cir 2001)). In support of its argument that Defendant's lack of knowledge of Plaintiff's disability entitles Defendant to summary judgment, Defendant cites numerous cases in which courts discussed the requirement that employers have knowledge of an employee's disability and need for an accommodation before being held liable for failure to accommodate under the ADA. (Dkt. No. 34 at 2-3). As explained above, Plaintiff's claim is not based on Defendant's failure to accommodate, so these cases are not directly on point. However, Plaintiff will not be able to satisfy the fourth prong of his prima facie case for wrongful discharge – i.e., the prong which requires Plaintiff to show that his discharge occurred under circumstances raising a reasonable inference of unlawful

---

[5] In Section II of his Report and Recommendation, the Magistrate Judge recommends allowing Plaintiff to pursue a claim for failure to accommodate, in addition to a claim for wrongful discharge, under the ADA. (Dkt. No. 32 at 20-21). Thus, the Court declines to adopt Section II of the Report and Recommendation. The Court adopts the remaining portions of the Report and Recommendation.

discrimination – unless Plaintiff can create a genuine issue of material fact as to whether Defendant was aware of Plaintiff's disability.

The Court finds that, construing all inferences and ambiguities in Plaintiff's favor, Plaintiff has carried his burden on this issue. Depression, anxiety, and other mental impairments can constitute disabilities under the ADA. *See Cassimy v. Board of Educ. of Rockford Public Schools*, 461 F.3d 932, 936 (7th Cir. 2006) (holding that major depression can constitute a disability under the ADA); *Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 861-62 (8th Cir. 2006) (holding that anxiety, depression, and obsessive compulsive disorder can constitute disabilities under the ADA). While Mr. Bryant may not have known the details of Plaintiff's mental problems at the time Plaintiff was terminated, it is undisputed that Mr. Bryant was aware on the day he terminated Plaintiff that Plaintiff had pulled out a gun and threatened to kill himself in front of his wife nine days earlier. Further, Ms. Wright testified that she told Mr. Bryant in a phone call on June 21, 2009, that Plaintiff was in the hospital, that Plaintiff was sick, and that she did not know when Plaintiff would be released. (Dkt. No. 25-9 at 10). Mr. Bryant testified that, after he found out that Plaintiff had threatened suicide, he believed that Plaintiff was unstable, could have posed a potential threat to the workplace, and was not capable of performing his job duties because he would have been distracted. (Dkt. No. 25-11 at 12). Under these circumstances, the Court finds that Defendant was sufficiently aware of Plaintiff's disability for Plaintiff to create a genuine issue of material fact with regard to the fourth prong of Plaintiff's prima facie case for wrongful discharge – i.e., the prong which requires Plaintiff to show that his discharge occurred under circumstances raising a reasonable inference of unlawful discrimination. Thus, Defendant's objection regarding its lack of knowledge of Plaintiff's disability is rejected with regard to Plaintiff's claim under the ADA.

## 2. Plaintiff's FMLA Claim

Defendant also objects to the Magistrate Judge's recommendation that Defendant's motion for summary judgment be denied as to Plaintiff's FMLA claim because "an employee cannot recover under the FMLA if the employer lacked knowledge of the need for an FMLA-qualifying leave." (Dkt. No. 34 at 3). In support of this argument, Defendant cites cases holding that summary judgment was appropriate on an employee's FMLA claim where the decisionmaker for the employer had no knowledge of the employee's FMLA leave or medical condition at the time of the employee's termination. (*Id.* (citing *Wright v. Sw. Airlines*, 319 Fed.Appx. 232 (4th Cir. 2009) and *Fulmer v. TranTech Radiator Products, Inc.*, No. 8:10-1854, 2011 WL 7414633 (D.S.C. Dec. 20, 2011)). The case *sub judice*, however, is distinguishable from these cases. In the case *sub judice*, Ms. Wright testified that, approximately one week before Plaintiff was terminated, she informed Mr. Bryant that Plaintiff had "tried to commit suicide with a handgun," "was in the hospital,"[6] "was sick," and "would be out of work" for an unknown amount of time. (Dkt. No. 25-9 at 10-11). It is undisputed that, in response to receiving this information about Plaintiff, neither Mr. Bryant nor anyone else with Defendant requested any medical records or any other information from Plaintiff regarding his medical condition.

In *Krenze v. Alexandria Motor Cars, Inc.*, 289 Fed.Appx. 629, 632 (4th Cir. 2008), the Fourth Circuit discussed the burden on an employee to provide sufficient notice to his employer

---

[6] In its sur-reply, Defendant argues that the Court should disregard Plaintiff's and Ms. Wright's testimony that they told Mr. Bryant that Plaintiff had been to the hospital because, according to Defendant, Plaintiff and Ms. Wright "testified inconsistently as to whether they told Mr. Bryant of the hospitalization." (Dkt. No. 37 at 4 n.5). However, the Court has reviewed the portions of the deposition testimony cited by Defendant, and the Court sees no inconsistency in Plaintiff's and Ms. Wright's depositions with regard to whether they informed Mr. Bryant of Plaintiff's hospitalization. Rather, both Plaintiff and Ms. Wright testified that they informed Mr. Bryant that Plaintiff was hospitalized.

regarding his medical condition as a prerequisite to asserting a cause of action under the FMLA. The Court held:

> The employee has the initial burden of triggering the FMLA by providing notice to her employer. However, under the framework established by the FMLA and the accompanying regulations, to satisfy this initial burden, the employee need only inform her employer that she needs leave from work for a medical reason. The employee must provide "verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). If the employee provides sufficient notice, the burden then shifts to the employer to gather additional information and determine if the FMLA is actually implicated. After the employee provides initial notification, "the employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). The employer may seek the employee's cooperation in gathering information. If the employer finds the employee's request for leave vague or insufficient, the employer should ask the employee to provide the necessary details through additional documentation and information. 29 C.F.R. § 825.302(c). The employer has the duty to elicit the details required under the FMLA. *Miller*, 250 F.3d at 835.

*Id.* at *2. Further, "[t]he regulations implementing the FMLA provide that when an employee's need for FMLA leave is unforeseeable . . . , '[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 161-62 (2d Cir. 2011) (quoting 29 C.F.R. § 825.303(a)). Here, based on the facts cited above, the Court finds that Plaintiff met his burden of providing notice to Defendant regarding his need for FMLA leave. The burden then shifted to Defendant "to gather additional information and determine if the FMLA [was] actually implicated," but Defendant did not take any steps to meet this burden. Thus, Defendant's objection regarding Plaintiff's failure to provide sufficient notice under the FMLA is rejected.

### ii. Objection Number Two: "Plaintiff Failed to Prove Pretext Under The ADA And FMLA."

In its second objection, Defendant argues that it is entitled to summary judgment because Plaintiff failed to prove that Defendant's asserted reason for terminating Plaintiff was pretextual. Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff can establish a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions. If the defendant meets this burden, the burden shifts back to the Plaintiff to come forward with evidence that the defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231 (4th Cir. 1991). In the case *sub judice*, the Plaintiff established a prima facie case of discrimination. Further, Defendant met its burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff. Specifically, Defendant asserts that, during Plaintiff's week-long absence from work the week of June 22, 2009, Defendant realized that the other employees could cover Plaintiff's responsibilities without Plaintiff's help. Thus, Defendant contends that Plaintiff's position was eliminated to save costs. While the Court agrees with the Magistrate Judge's finding that Defendant met its burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff, the Court also agrees, notwithstanding Defendant's objection, that the Magistrate Judge was correct in finding that Plaintiff met its burden of coming forward with sufficient evidence for a reasonable trier of fact to find that Defendant's asserted reason was pretextual.

In support of Defendant's asserted reason for terminating Plaintiff, Mr. Bryant testified regarding Defendant's financial struggles over the years leading up to Plaintiff's termination and Defendant's desire to cut costs in any way possible. Mr. Bryant testified that Defendant's

Summerville plant employed around 70-80 people at the beginning of 2008, and that that number had dropped to around 40 by 2009 and to around 30 by 2010. (Dkt. No. 25-11 at 4). This testimony is undisputed and supported by the testimony of Plaintiff, his wife, and Ms. Young. Defendant also emphasizes that it has never hired anyone to replace Plaintiff, indicating that Defendant truly did not need Plaintiff to operate.

In response, Plaintiff argues that Defendant's cost-saving explanation is a mere pretext and that Defendant's actual reason for terminating him was his disability and his decision to take leave pursuant to the FMLA. In support of this argument, Plaintiff points to several pieces of evidence. First, Plaintiff points out the suspicious timing of his termination: Mr. Bryant terminated Plaintiff (and his wife) on Plaintiff's first day back at work after his hospitalization.[7] Further, Mr. Bryant testified that he was not considering terminating Plaintiff prior to finding out about Plaintiff's hospitalization. (Dkt. No. 25-11 at 9). Also, Plaintiff and his wife were the only employees of Defendant who were laid off during June of 2009. In addition, Plaintiff testified that Mr. Bryant had acted frustrated in the past when he had missed work for health related reasons. (Dkt. No. 25-10). Also, Ms. Wright testified that, when she spoke to Ms. Young on the phone on June 21, Ms. Young told her not to tell Mr. Bryant the specifics about the June 20 incident because Mr. Bryant would fire Plaintiff if she did. (Dkt. No. 25-9 at 9). Plaintiff further argues that Defendant's cost-saving explanation is not believable because,

---

[7] Defendant argues that "the temporal proximity between Plaintiff's hospitalization and the elimination of his position [is] insufficient to prove pretext." (Dkt. No. 34 at 14). While Defendant is correct that temporal proximity, *standing alone*, is insufficient to establish a jury question regarding pretext, temporal proximity may be considered as one factor when determining whether Plaintiff has established a jury question regarding pretext. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (holding that, "although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual'") (internal citations omitted).

14

during 2008 (which was during the time period in which Defendant was downsizing and trying to save costs), Plaintiff took three days off from work, and Defendant did not realize that it could operate without Plaintiff's help. (Dkt. No. 25-10 at 9). Plaintiff argues that his workload actually increased in 2009 because he had to take on the responsibilities of some people who were laid off, and that Defendant's assertion that it did not need Plaintiff in 2009 is therefore not believable. (Dkt. No. 25-10 at 9-10). Finally, Plaintiff points out that Mr. Bryant testified that, after he found out that Plaintiff had threatened suicide, he believed that Plaintiff was unstable, could have posed a potential threat to the workplace, and was not capable of performing his job duties because he would have been distracted. (Dkt. No. 25-11 at 12).

Considering all of the evidence in the record, the Court finds that a reasonable trier of fact could find that Defendant's asserted reason for terminating Plaintiff is false, and that Defendant unlawfully discriminated against Plaintiff by terminating him. Thus, Defendant is not entitled to summary judgment based on its argument that Plaintiff cannot show pretext. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993) ("In the context of a summary judgment proceeding, [*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)] requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age."); *see also Adams v. Trustees of the University of N.C.-Wilmington*, 640 F.3d 550, 559 (4th Cir. 2011) (holding that, where the burden shits back to the employee to show pretext, the employee must raise a genuine issue of material fact that the Defendant's explanation is purely pretextual to avoid summary judgment).

15

Finally, Defendant argues that Plaintiff failed to carry his burden on pretext as a matter of law because Defendant has not hired anyone to replace Plaintiff since his termination. (Dkt. No. 34 at 15-16). Defendant cites certain cases in which the court granted summary judgment to an employer in a discrimination case and emphasized the fact that the employer had not hired anyone to replace the plaintiff. *Id.* (citing *Burgess v. JMH Hotels, LLC*, No. 6:08-3919, 2010 WL 1493132 (D.S.C. April 13, 2010); *Washington v. City of Georgetown*, No. 08-402, 2010 WL 3892002 (E.D.Ky. Sept. 29, 2010); *Pope v. Quivira Council*, No. 06-2130, 2007 WL 4561143 (D.Kan. Dec. 20, 2007)). However, none of these cases hold that an employer is absolutely insulated from liability for wrongful termination under the ADA or FMLA if the employer never hires someone to replace the terminated employee. In fact, the Court in *Pope* expressly held to the contrary when discussing the plaintiff's burden to establish a prima face case of discrimination. *See Pope*, 2007 WL 4561143, at *4 n.10 (citing *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)). In *Plotke*, the case cited in *Pope*, the Tenth Circuit held:

> While we have held that *one way* a plaintiff may establish a prima facie case is to include evidence that her job was not eliminated after her discharge, we have also noted that "[t]he elimination of the position ... does not necessarily eviscerate a plaintiff's claim that her discharge was ... motivated [by discrimination]." *Perry v. Woodward,* 199 F.3d 1126, 1140 n. 10 (10th Cir.1999). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.' " *Kendrick,* 220 F.3d at 1227 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). There must simply be a logical connection between each element of the prima facie case and the inference of discrimination. *Id.* (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)).
>
> Thus, contrary to the district court's implicit holding that the elimination of Dr. Plotke's position was *per se* fatal to her case, the fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios.

*Plotke*, 405 F.3d at 1100.[8] Thus, Defendant's objection regarding Plaintiff's failure to establish pretext is rejected.

### iii. Objection Number Three: "Stark Truss Did Not Constructively Discharge Plaintiff."

In this objection, Defendant argues that the Magistrate Judge erred by failing to find that Plaintiff voluntarily resigned from his employment with Defendant because Mr. Bryant offered Plaintiff a lower paying job during the meeting on June 29, 2009, and Plaintiff rejected it. According to this argument, Plaintiff should have been required to show that he was constructively discharged from Defendant, which Plaintiff has not shown. This argument, which is the same argument Plaintiff made in its motion for summary judgment (Dkt. No. 25-1 at 9-11) and which the Magistrate Judge rejected in his Report and Recommendation (Dkt. No. 32 at 15-16), is unpersuasive. On summary judgment, "the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). Plaintiff testified that, during the meeting with Mr. Bryant on June 29, Mr. Bryant told him that he knew it was bad timing, that it was a corporate decision, but "I got to let you go." (Dkt. No. 25-10 at 11). Plaintiff testified that as he was getting up to leave the meeting, Mr. Bryant said, "I can check and see if I can bring – keep you here as a yard guy, but it will stay as – you know, you'll have to stay and get a pay cut as well." (*Id.*). Plaintiff testified that he did not believe it was a sincere job offer, so he kept walking. (*Id.* at 11-12).

---

[8] While this excerpt is from the portion of the *Plotke* opinion addressing whether the plaintiff established a prima facie case, the fact that an employer did not hire someone to replace the plaintiff does not, by itself, entitle the employer to summary judgment at the pretext stage of the analysis either. The fact that Defendant has not hired anyone to replace Plaintiff is a piece of evidence which may be very persuasive to the jury when Defendant argues that its asserted reason for terminating Plaintiff was not pretextual. However, the Court finds, as discussed above, that Plaintiff has presented sufficient evidence for a reasonable fact finder to find that Defendant's asserted reason for terminating Plaintiff was pretextual, notwithstanding this piece of evidence.

17

Further, Defendant's employment papers indicate that Plaintiff was terminated and that he did not resign. (Dkt. Nos. 25-2 and 29-2). While Mr. Bryant disputes the details of the conversation with Plaintiff on June 29, a genuine issue of material fact exists as to whether Plaintiff was terminated as opposed to having resigned. Thus, the Court rejects this objection.

### iv. Objection Number Four: "Stark Truss Would Have Terminated Plaintiff For Using Marijuana and Cocaine."

In this objection, Defendant argues that the Magistrate Judge erred by rejecting Defendant's argument that Defendant is entitled to summary judgment pursuant to the after-acquired evidence doctrine. This doctrine "concerns the effect of evidence of employee misconduct acquired by the employer after the employee has been terminated for a discriminatory reason." *Miller v. AT&T Corp.*, 250 F.3d 820, 837 (4th Cir. 2001). The doctrine "does not provide a complete bar to recover"; rather, "[t]he rule merely limits the 'calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.'" *Francisco v. Verizon South, Inc.*, 756 F.Supp.2d 705, 729 (E.D.Va. 2010) (quoting *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362-63 (1995)). Further, the doctrine "requires the defendant to establish that the wrongdoing was of such severity that the employee *in fact* would have been terminated on those grounds alone." *Id.* (internal quotations omitted).

Defendant's argument pursuant to the after-acquired evidence doctrine is based on Plaintiff's deposition testimony and medical records indicating that Plaintiff used marijuana and cocaine during the years he worked for Defendant. Defendant asserts that it would have fired Plaintiff on those grounds alone pursuant to the drug policy set forth in its employee handbook, which provides:

> While on Stark Truss Company, Inc.'s premises, or while operating or riding in or on a Company vehicle and while conducting business-related activities of Stark Truss Company, Inc.'s premises, no employee may use, possess, purchase,

18

distribute, sell, or be under the influence of alcohol or illegal controlled substances.

(Dkt. No. 25-3). However, as explained in the Magistrate Judge's Report and Recommendation, there is no evidence in the record that Plaintiff ever used, possessed, purchased, distributed, sold, or was under the influence of marijuana or cocaine "while on Stark Truss Company, Inc.'s premises, or while operating or riding in or on a Company vehicle and while conducting business-related activities [on] Stark Truss Company, Inc.'s premises." In its objections, Defendant does not explain how the after-acquired evidence doctrine applies despite this point. Accordingly, the Court rejects Defendant's objection regarding the after-acquired evidence doctrine.

## IV. Conclusion

As explained herein, the Court adopts the Magistrate Judge's Report and Recommendation, except for Section II. Accordingly, Defendant's motion for summary judgment is denied.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

July 24, 2012
Charleston, South Carolina